23-6216. Council, for appellant, if you would make your appearance and proceed, please. Good morning, your honors. I am Stacey Haas-Feltner, and I represent appellants Kelly Cassidy, Brandon Lee, and Robin Ridner, who are all sergeants with the Oklahoma City Police Department. This case arises out of the March 27, 2020 arrest of Dewan McCoy by Sergeant Cassidy's Lee and Ridner at the Biltmore Hotel in Oklahoma City. McCoy died several days later on April 2, 2020, at the hospital. The issues presented in this appeal are narrow, focusing on the defendant officer's conduct during an approximately 90-second period after McCoy was handcuffed. Council, aren't they even more narrow than that, though, because of our jurisdictional constraints in this type of appeal? We can only review abstract questions of law, right? And the problem that I had or the confusion that I had that I was hoping you could help me with is that in your briefing, you seem to assume that we can review the facts de novo. We can just make our own factual assessments. And that is the unusual posture. You would have to explain why that is so. Why do we do not accept the district court's factual findings? And I don't see that you have that you have done that. And I was hoping to get your argument on that today. Well, the court does have the authority to look at the video for blatantly contradictory, if the video blatantly contradicts what the plaintiff is saying or what the court has said. So I think you are entitled to look at the video in that period of time that is an issue. So you're relying on the blatantly contradicted by the record exception to the normal course where we would accept the district court's factual findings. Is that correct? I am relying on that with respect to the fact that you can consider the facts, but I think the crux of my argument is that the law is not clearly established in this case. I think you can look at that one and a half minute period, but I think even if you accept the district court's fact findings on that, when we get to the issue of clearly established, the law is simply not clearly established. Yes. Go ahead. Thank you, Chief. And let me follow up when you say that if we accept the district court's fact finding on that, what precisely are you referring to? What fact are you referring to? Because the one that seems to be not marshaled thoroughly in the briefing, as far as I can tell, is that the district court said there was a period of roughly a minute and a half during which Mr. McCoy had stopped resisting. So are you asking us to not accept that factual finding? Or are you saying even if we accept that factual finding, the law is not clearly established? I think even if you accept that factual finding, the law is not clearly established. But that then is your argument. I mean, because this has been pointed out on an interlocutory appeal, we have to accept the facts as presented. Yes. The heart of my argument goes to whether the law, with respect to the type of force that was used here, specifically prone restraint, was clearly established. So this case really turns on the reading of McCoy v. Myers and Weigel v. Broad, and whether those two cases are sufficient. And I would include Cruz versus Laramie in that. Why is Weigel not dispositive? Weigel is not dispositive because the court in Weigel said, I mean, you had three judges, and they couldn't make a decision, or they couldn't agree on specifically what Weigel said. One of the three judges expressed the view that pressure on a suspect's back alone can violate clearly established law. One believed pressure combined with leg restraints was prohibited. And then the third, in dissent, believed that the clearly established law prohibited only the most extreme form of positional restraint, which was hog tying as it's defined in Cruz versus city of Laramie. Well, wasn't the disagreement there only about when the person became subdued? And here, if we're accepting the district court's factual finding, that's not an issue for us. And so the consensus holding in Weigel would be dispositive, right? No, I do not believe that is the holding of Weigel, because the concurrence said, I only agree that there was excessive force here because his feet were bound, or at the point his feet were bound. Because that's when he was subdued. I don't think that is what the concurring opinion said. I mean, that judge specifically focused on not only that he was subdued and handcuffed, but also that his feet had been bound. Wasn't the equivalent of his feet being bound here, bound not by chains, but bound by one of the officers holding them, pushing them up like he did. I certainly think that that is a position the court could rule in cases going forward. But I do not think that when you look at Weigel and Cruz, you can come to that conclusion. I mean, Weigel specifically relies on Cruz. Cruz specifically talks about hog tying, which is not just holding someone's feet up, it's binding the hands and the feet with less than 12 inches of separation. So I don't think that a reasonable officer, even if they're familiar with Weigel and with Cruz, would understand that pushing Mr. McCoy's feet up is the equivalent of putting him in leg restraints or a hobble, which was not done here. So if the through line is lack of ability to act, and I'm talking about the prisoner or the defendant, lack of ability to do anything but comply, and then the application of force, why is it necessary that they say, oh, well, you know, we're not hog tying him, so I guess we're just scot-free? I mean, why does that matter? I mean, yes, this is a particularized inquiry, but the particularized inquiry turns on certain variables. I mean, and the variable is lack of ability to respond, you know, and they're compliant, the 90 seconds that the district court talked about. And during that 90 seconds, the application of what turned out to be lethal force that involved an analogous form of pressure on the legs. So I'll get out of my monologue and ask this. Aren't we in the analogy business? I mean, isn't that what this is about in conducting clearly established law? It doesn't have to be hog tying, does it? It does not. Well, I think that if you were reviewing this on a blank slate without Weigel and without Cruz, that certainly that would be a valid argument. But that's not the case here, where you have the one controlling case, or the primary controlling case, in my opinion, Weigel, and you have three judges who looked at the same set of facts and found three different standards as to what constituted excessive force in the context of pressure and prone restraint. I think in that context, it would be very difficult for an officer to understand that folding someone's legs up is the equivalent of hog tying. What is the rule in Weigel? In your view, what did Judge Seymour and Judge Hart agree on, I guess? Judge Seymour and Judge Hart agreed that if a person is restrained and their legs are bound, then you cannot continue to put pressure on their back. I think- They didn't say how bound. They didn't say if bound by rope, or by rope of a certain dimension, or by handcuffs or chains. They just said bound, right? Well, as I understand it, prior to the time the suspect was bound with, I believe it was, rope, there was a bystander putting pressure on his legs. And Judge Hart did not consider that to be enough. I also think we need to look back at McCoy versus Myers during this 92nd period, because the issue is not, was the suspect, at what point was the suspect restrained? The point is, at what point did the officer reasonably believe, I'm sorry, that the suspect was restrained? And that perception is not always instantaneous. Well, are you now deviating from the district court's findings? I mean, the district court made its finding. 90 seconds, he was restrained. He was not doing anything, and he was compliant. So that's what we're stuck with, right? In my opinion, under McCoy, the fact that his prior conduct has to be factored into the decision of whether the officers understood that he was restrained. Even if the district court said he is no longer struggling at this point, the officers have just been in a very intense fight. They're all still breathing heavily. Let's hit the pause button. I mean, to the extent that you go down this road and you start deviating from what the district court found, you're putting yourself right out of jurisdiction. So you're stuck with what the district court said happened, right? Yes, but the district court said that an officer looking at McCoy would not necessarily understand that this force was not allowed. The court said it was at least less than obvious that McCoy clearly establishes the conduct at issue in the incident case violated in Court 308. We're not talking about McCoy. We're talking about what the district court found here. And my point is, you are stuck with that. And again, if you walk away from what the district court found here, you're walking right out the door of jurisdiction. So I take it that is not what you're doing. That is not what I'm doing. I'm saying with the facts the district court found, the district court still found that an officer would not understand the law was clearly established that their actions were unconstitutional. The reason there is because you have to look at when the officer could reasonably perceive that the danger was over. I mean, there may be a period when looking at it with 20-20's hindsight, the danger is over, but the officers on the scene did not perceive that. And a case where the officers have been in a fight like this, and the plaintiff has, Mr. McCoy, the decedent has been kicking even after he was handcuffed, the fact that he has stopped kicking doesn't mean that they can immediately assume or that they simply perceive that, okay, now there's no more threat. I mean, maybe this was an argument that was available to you under McCoy, but did you develop that on appeal? Yes, I believe I did. I argued exactly how, I argued the facts of McCoy. I argued that the court talked about the perception of the officer and looking back at Fancher versus Berrios. So I believe that was well-developed in our brief. But it still seems to rely on your conclusion or your view of the facts as being different from what the district court found. Seems to rely on Mr. McCoy here being not subdued. I don't think that's the case because after the district court made a factual finding and then it said, looking at the clearly established law of McCoy and of Weigel, in both cases, we don't think this is obvious that an officer would understand this conduct is prohibited. And in my opinion, if it's less than obvious, that's by definition not clearly established. I would like to reserve the rest of my time for rebuttal if you don't have any further questions. Yes, counsel. Good morning. May it please the court. Brittany Jaggers-Johnson on behalf of the appellee. And I would like to start with some of the scope questions and then the facts in the matter. So the scope right now is limited to the specific facts that the court below found and based its decision off of. Those facts are in the order, and I will go over those briefly so that we all know exactly what facts we are talking about. And they are that- You have to be talking about clearly established facts. I mean, didn't the district court express some ambiguity or hesitation about the outcome of this? And wouldn't that hesitation argue against clearly established? Not in this case, Your Honor. I don't believe so because the case law also supports that the clearly established point of law regarding the actions taken. Well, but the law has to be applied to facts. I mean, I may be mistaken on that. I'll have to go back and reread what the district court said, but I have a recollection that he expressed some hesitation or some ambiguity about this whole thing. Sure, what the court was saying, in my opinion, is that there is video evidence that contradicts some of what the defendants have, the appellants have pled, but that such video evidence could certainly support, or facts that could certainly support the jury's finding. If there's some evidence pro and some against, how can you say it's clearly established? Well, the facts that- Yeah, but the facts have to be applied to the law, and if the facts are ambiguous, you can't tell whether the law is ambiguous or not until you know what the facts are. Well, Your Honor, I believe that the case law has actual facts in them that are analogous enough to these facts that would put everyone on notice that- Would they be analogous to either version of the facts that the district court thought were ambiguous? I do believe so, because the Water v. Coleman case is analogous to where someone is putting pressure on or restricting someone's movement of their legs, which is what Officer Lee did in this matter, and then the Booker v. Gomez case that was also cited by the court is where putting pressure on someone's back is also another factor that's excessive force all on its own. So those two cases support what the court's findings were, even though they are separate cases where they are saying each of those actions, it looks like exclusively, could be excessive force if they were more force than what was needed at the time of the application of the force. Would you agree that in this case, sort of given how it's been argued, which is so important to us given our constraints jurisdictionally, that we would have to accept that the district court found that there was a period of roughly 90 seconds where your client was subdued? Is that a fair reading of the findings in this case? That is certainly what the court found, at least. And that is, are you saying that that's ambiguous? I'm not saying that anything is ambiguous. Okay, understood. So if we use that factual finding to then go on the hunt for clearly established law, what is the case or cases that you contend are the clearly established law cases here? Okay, so Weigel, that is in throughout the brief, and I believe on both sides, is the establishing case. And that was in 2008. It's cited to Cruz, which was a 2001 case. And the Weigel case, the court had told everyone at that point that it was clearly established, that certain actions were clearly established, excuse me, and then it was reiterated in Weigel. And then in both Waters v. Coleman, which the court did cite, and also Booker v. Gomez, which the court did cite, those both pointed to the Weigel case in the conclusions there, that there was clearly established law dating back from 2001 and 2008. What do you say to your friend's position that the Weigel doesn't actually support you because of this conflict, perhaps, between the majority opinion and the concurrence, that the ultimate consensus holding there doesn't support you? Well, of course, then I would disagree with counsel in that reading of the cases, because the majority opinion did give us the language that's needed. And here, in the Weigel case, the court says that if the facts plaintiff-profit are true and the jury draws inferences most supportive of those plaintiffs' position, the law was clearly established that applying pressure to Mr. Weigel's upper back once he was handcuffed and his legs restrained was constitutionally unreasonable due to the significant risk of positional asphyxiation. And then, so I think that answers the case for that matter. And then the court then goes on to talk about cases from other circuits that have found it clearly established that putting substantial or significant pressure on a suspect's back while the suspect is in a face-down prone position after being subdued and or incapacitated constitutes excessive force. And where did Judge Hartz get off the train? What was his different perspective? And essentially, what do we do with that? In other words, what can be extrapolated from his position as to why he concurred as opposed to dissenting? Well, for my reading and my recollection, it's somewhat based upon the binding of the leg issue and the current matter that's before us. It's true that there was no binding of the leg specifically with a rope or tie or anything of that manner. But the legs were held in place by one of the officers with hands and body weight and legs eventually, et cetera, for a period of at least about 13 minutes after the handcuffing of the suspect at that time. Does that answer? Yes, it does. Okay, thank you. And so what I do want to focus on then is the fact that the court did find that there was that 90-second period where Mr. McCoy was not kicking or doing anything to resist the officers. I do want to point out that in nowhere in the record does anyone say that Mr. McCoy was being aggressive or acting in a dangerous manner toward the officers. So that would go to the fact that after he actually was handcuffed and was subdued, the officers then had to be objectively reasonable in assessing whether or not McCoy was going to become a big immediate threat to them or any member of the public at that time. Counsel, would you agree that the legal sort of off-ramp jurisdictionally for us is if the video blatantly contradicts, right? That's one way for us to sort of do our own fact-finding. The video isn't super clear. Would you agree? I mean, there's some in that 90-second interval that the district court was focused on. But, you know, how can we really say that your client was completely subdued at the time, that just the video's jerking? Can you speak to that? Sure, Your Honor. Thank you for the question. So looking at the body camera footage, there was a period actually of a little over 30 seconds where Mr. McCoy had been placed in a recovery site position. And there was no movement, no kicking or anything. None of the officers had to say anything about kicking. But at the end of that approximate 30-second period, you can see on the video where they, there's something about kicking. Officer Lee said something about kicking. And then you can see on the video Mr. McCoy then is pushed back over into a prone position. And at that point, if they want to, the officers felt any kicking, at that time, excuse me, it's been discussed in a case law that a kick or two from a suspect who's been apprehended but is in a prone position and handcuffed and other restraints applied could be simply trying to breathe. At no point did any officers state that Mr. McCoy was kicking at them. Certainly there was a struggle as we've heard about already from counsel. And no officer claimed to be struck at any point. There was no scratch. But are we looking at the officer's reasonable perception? Yes. So it's them being objectively reasonable at that time. So the fact that he was not doing anything on the video or according to officer's testimony during that over 30-second period, I think it may have been about 35 seconds, and it's not until they pushed him back over onto his, into the prone position, that you heard anything about kicking and there was a commotion. That should have let the officers, any reasonable officer know that as long as you leave him in the recovery position where he can try to get air after the struggle that has ensued, perhaps he's fine and not a threat to anyone, just like he had never presented an actual threat to anyone violently or dangerously prior to. And let me clarify. It seems if the video is fuzzy in some places and by that gives rise to a certain ambiguity that one could accept your client's position or accept the officer's position as to what happened in this sort of haze. I mean, you can see something, but you have different views on what happened. Whose view do we take as a matter of law? Certainly, Judge. So in that case, not an actual case, but the facts are to be read and inferences made in favor of the non-moving party, which in this case is the appellee. And so we agree with what the court found as far as qualified immunity in regard to the officers because the court did find that a reasonable juror could watch the video and determine the facts were as plaintiff has presented. And any reasonable juror perhaps could find a different way, but that is why the court said that that would be a jury question and that the finding was as it is. What is the relevance, if any, about whether the decedent McCoy was or wasn't on drugs or alcohol at the time? He was certainly acting irrationally. Is there any evidence that the officers, I'm not talking about something discovered later in autopsy or something, but from the officer's perspective, was there any evidence that they knew or suspected he was either impaired for drinking or drugs or mental restraints? Yes, there was, Judge. And if I may? Yeah, well, I see that cutting both ways, but I am interested in your answer. I mean, if you think he is impaired, let's say by drugs, you might say, well, that means we got to be more careful with him. But it might also mean that his actions are less predictable and you have to be more cautious about it. So I don't quite know where it cuts, but I think it's at least something relevant. So I'm just asking factually, what was the evidence of impairment? Well, according to the officers at the scene, they commented about the strength of Mr. McCoy, that he seemed quite strong for a person of his size. And I did see in the record that when the hotel called and made the report, someone reported that Mr. McCoy was high. And so the officers knew that upon showing up, that perhaps the person was under the influence. And it's in the record that the hotel at which this occurrence happened was known to be a bit problematic property. I don't understand how that relates to whether he was high or not, but yeah. It's in the record. And so I think the officers indicated at some points during testimony that perhaps they would think that perhaps something would be going on drug-wise because of the location to where they were called. Was there testimony that this was known to be a drug center of transactions of drugs? That is the testimony. But yes, to the point, though, that then there is the court's discussion in other cases about excited delirium and other mental states. And in this case, I do believe that the officers could have been a reasonable officer, could have been alerted to the fact that Mr. McCoy at first was speaking reasonably with everyone. But after the struggle ensued, he did begin yelling and calling for family members and exhibited perhaps stronger than usual behavior, excuse me, strength. And, you know, perhaps then should have been dealt with more carefully, especially post-handcuffing. Because that is, that position is what creates that position of asphyxiation. Not necessarily the struggle, but it's the putting the person on their stomach in that prone position with the handcuffing, with Officer Reitner's knee in Mr. McCoy's back, and with Officer Lee pushing the decedent's feet up to his buttocks, which is a fact that was found by the lower court. He was handcuffed behind his back. He was. Okay. And so all of those factors go into the analysis that the court has made in previous decisions. And for those reasons, I do ask that the court go ahead and affirm the lower court's decision denying the officer's qualified immunity in this matter and sending the matter to a jury. Because as it's also in the record, Officer Lee said that there was no more force needed after Mr. McCoy was handcuffed. Thank you. Thank you, counsel. I would like to respond to your question, Judge Holmes. You asked about Judge Hart's off-ramp in Weigel. And in my opinion, the difference in that case is the point where it went from restraint of the feet in the sense of someone just putting weight on them and actually binding them. And I think the critical sentence is, I do not think the defendants violated Mr. Weigel's constitutional rights before his legs were bound. In light of Mr. Weigel's strength and previous behavior, it was not, in my view, unreasonable of the officers to keep him in a prone position with weight on his upper back so long as the only restraint on his legs was the weight of a bystander sitting on them. So I think Judge Hart is drawing a very clear distinction between putting some weight on your feet or folding your feet up and actually binding your feet. But in service of what? Why is he interested in this? He's only interested in this because we're trying to isolate when the individual is subdued. Why is that an incorrect reading of the case? Maybe it is. Can you tell me why? I think that that may be an issue in this case throughout. We have Weigel, we have Cruz, we have Booker, and none of them provide a clear answer to the officers as to what they were supposed to do in this case or why what they did violated clearly established law. I mean, you have three judges in Weigel, which is our controlling case, with three different positions. So I believe that is, by definition, not clearly established. Let me follow up on Judge Rossman's point. To use her, well, as I understood her, the question was, is if Judge Hart was trying to determine when the defendant, when the decedent, or I don't recall, yeah, he died, the decedent, when he was subdued, okay, that's the question. If that is what separates Judge Hart from the other opinions in the case, then that is not an issue here, right? Because we have to accept the district court's view that for 90 seconds he was subdued. In other words, the thing that could have been the basis for an off-ramp and point of distinction wouldn't be a distinction here. Well, I disagree with that because I think you have to go back to McCoy, and McCoy recognizes that there may be a period of time between the point at which the suspect is subdued and the point at which a reasonable officer would perceive that he is effectively subdued and there is no further threat. And I think given Mr. McCoy's behavior, I know it's confusing with the case and the person being the same name, with the decedent in this case's behavior up to the point that we're in this 90-second period, it is both possible for the decedent to be subdued and for the officers to not yet recognize that. So for that reason, I would ask that you reverse the court on just this narrow window of qualified immunity. Thank you. Thank you, counsel. Case is submitted.